UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:06CV-40-R

TONYA VANDEVELDE, et al.                                        PLAINTIFFS

v.

CLIFFORD A POPPENS, M.D., et al.                               DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendant RCEM, Inc. d/b/a Russell County Hospital's ("RCH") Motion for Summary Judgment (Docket #80). Plaintiffs have filed a response (Docket #116) to which RCH has replied (Docket #164). This matter is now ripe for adjudication. For the reasons that follow, RCH's Motion for Summary Judgment is GRANTED.

## BACKGROUND

On September 24, 2005, at approximately 5:50 a.m., Plaintiff Tonya Vandevelde presented to the RCH Emergency Department complaining of low back pain. Mrs. Vandevelde was thirty-three weeks pregnant and had traveled from her home in Cincinnati, Ohio to Russell County, Kentucky to visit relatives.

Upon presentation to the RCH Emergency Department, Mrs. Vandevelde was seen by Defendant Dr. Clifford A. Poppens. Dr. Poppens performed an internal pelvic examination and noted fetal heart tones. There was no effacement or dilation. Based on his examination, Dr. Poppens diagnosed Mrs. Vandevelde with Braxton-Hicks contractions. Dr. Poppens discharged Mrs. Vandevelde with instructions to stay off her feet, follow up with her obstetrician in Cincinnati when she returned home, and to return to RCH if needed.

Later that morning, Mrs. Vandevelde presented to Russell County Primary Care ("RCPC"). There is no relationship between RCH and RCPC.[1] Mrs. Vandevelde complained of severe low back pain as well as abdominal/pelvic pain.  RCPC began to arrange a transfer to Lake Cumberland Regional Hospital for OB/GYN service; however, while these arrangements were being made, Mrs. Vandevelde began to bleed from her vagina.  Mrs. Vandevelde was then taken by ambulance to RCH.

At 10:55 a.m., Mrs. Vandevelde arrived at the RCH Emergency Department and was seen by Defendant Dr. Peter Rives.  Dr. Rives obtained the fetal heart rate using a fetal hear monitor and observed a fetal heart rate of 132 beats-per-minute.  Dr. Rives then called Lake Cumberland Regional Hospital and spoke with Dr. Andrea Hill, OB/GYN, to arrange transport of Mrs. Vandevelde to Lake Cumberland Regional Hospital.  Dr. Hill accepted the transfer and Mrs. Vandevelde was taken via ambulance to Lake Cumberland Regional Hospital.  Upon arrival at Lake Cumberland Regional Hospital, Mrs. Vandevelde was diagnosed with intrauterine fetal demise.

Plaintiffs filed their Complaint on March 22, 2006.  Plaintiffs asserted that Defendants' medical negligence, failure to obtain informed consent, negligent credentialing, and misrepresentation of qualifications were individually and jointly the proximate cause of the injuries and damages suffered by Plaintiffs.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

---

[1]  RCPC is located in a building across the parking lot from RCH.

2

entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

## I.   NEGLIGENT CREDENTIALING

Plaintiffs concede that the evidence developed to date does not support a negligent credentialing claim. Therefore, this Court finds that this claim fails as a matter of law. *See*

*Hartsel*, 87 F.3d at 799.

## II.   VICARIOUS LIABILITY

RCH asserts that physicians who practice medicine at RCH, such as Defendants Poppens and Rives, are not employees or actual agents of the hospital.  Instead, RCH asserts that these physicians are independent contractors.[2]  RCH argues that, based on their status as independent contractors, Plaintiffs cannot seek to hold RCH vicariously liable for the acts of Defendants Poppens and Rives. Plaintiffs assert that ostensible agency between RCH and Defendant Poppens does exist and seeks

---

[2]  Defendant Poppens signed an Independent Contractor Agreement with RCH, stating in pertinent part:

STATUS OF THE PARTIES

5.1   Independent Contractor.  In the performance of any and all services to be rendered pursuant to this Agreement, it is mutually understood and agreed that Contractor shall at all times be acting and performing as an independent contractor.  Nothing contained in this Agreement shall be construed as creating or implying any relationship of employment or agency for any purpose whatsoever.  Hospital shall neither have nor exercise any control or direction over the medical judgment of Contractor, or over the methods or manner by which he/she performs clinical work under this Agreement.

As an independent contractor, Contractor shall (i) pay, or cause to be paid, all applicable federal, state, and local taxes, including FICA; (ii) make or cause to be made, any and all required payments relating to the Contractor, including any unemployment compensation fund and Worker's Compensation Fund payments; and (iii) maintain or cause to be maintained unemployment insurance and Worker's Compensation Fund Insurance on Contractor, as any or all of the above shall be required by Kentucky law.  Contractor shall indemnify and hold harmless the Hospital, and any of Hospital's officers, directors, employees, agents, attorneys or assigns, against any and all liability related to its failure to withhold income taxes or paying or not paying social security taxes or any other payments required under law with respect to the Contractor.

Defendant Rives also signed an Independent Contractor Agreement with RCH containing similar language.

to hold RCH liable for Defendant Poppens's actions on that basis.

"An apparent or ostensible agent is one whom the principal, either intentionally or by want or ordinary care, induces third persons to believe to be his agent, although he has not, either expressly or by implication, conferred authority upon him." *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934) (citation omitted). One may be held vicariously liable for the acts of an agent, but may not be held liable for the acts of an independent contractor. *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). "The burden of proving agency is on the party alleging its existence." *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992).

Absent notice to the contrary, a person has a right to assume that treatment received at a hospital emergency room open to the public is being rendered through hospital employees and that any negligence associated with that treatment will render the hospital responsible. *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 258 (Ky. 1985). In *Floyd v. Humana of Virginia, Inc.*, the plaintiff was in labor when she presented to Humana Hospital University. 787 S.W.2d 267, 268 (Ky. Ct. App. 1989). She was administered an anaesthetic, which allegedly caused her injury. *Id.* The plaintiff named Humana of Virginia as a defendant on an ostensible agency theory, claiming that it was liable for the anesthesiologist's negligence. *Id.* at 268-69. The court affirmed the dismissal of Humana of Virginia from the case, stating that "the testimony of the appellant admitting that she had read and signed each of the admission forms to Humana of Virginia Hospital . . ., which indicates her knowledge that the doctors were independent contractors and not agents of the hospital, to be determinative in this case." *Id.* at 270. The court held that the ostensible agency theory failed as a matter of law because "[t]here was no representation or other action to induce appellant to believe that the physicians were employees or agents of Humana Hospital University; in addition,

5

the admission form which appellant signed specifically indicated same." *Id.*

In *Roberts v. Galen of Virginia*, the Sixth Circuit analyzed the *Paintsville Hospital* and *Floyd* decisions in addressing the plaintiff's state law negligence claim, based on ostensible agency, against a hospital for the acts of surgical residents. 111 F.3d 405, 411 (6th Cir. 1997), *rev'd on other grounds,* 525 U.S. 249 (1999).  The hospital had an authorization form that clearly stated the independent status of physicians, residents, and medical students, but the plaintiff did not sign the form, presumably because she was unable to do so because of her illness. *Id.* at 412-13.  The court found that whether or not the patient had read or signed the disclaimer was not dispositive, otherwise patients too critical to sign the disclaimer could sue the physician for negligence whereas those able to read and sign the disclaimer could not. *Id.* at 413.  The court instead stated that the result should turn on whether the hospital holds its physicians out to be employees or something else. *Id.*  The court found that "the actions of the hospital, rather than the knowledge of the patient, is controlling in a case where the patient is unable to obtain actual knowledge of the hospital's disclaimer." *Id.* The court upheld the district court's dismissal of plaintiff's state law claim of negligence, stating that the hospital had clearly attempted to alert the public that its physicians were not employees or agents of the hospital. *Id.*

The RCH Consent Upon Admission form reads in pertinent part:

It is acknowledged that all physicians and surgeons furnishing service to the patient, including emergency room physicians, radiologist, pathologist, anesthesiologists, etc. are independent contractors and are not employees or agents of the hospital.  The patient is under the care and supervision of his/her attending physician and it is the responsibility of the hospital and its staff to carry out the [instructions] of such physician.  It is the responsibility of the patient's physician or surgeon and not the responsibility of the hospital or its employees to obtain the patient's informed consent, when required for medical or surgical treatment, special diagnostic or therapeutic procedures, or hospital services rendered under [to] the patient under the general and special instructions of the physician.

RCH attached two Consent Upon Admission forms to its motion which it claims Mrs. Vandevelde signed during her two visits to the RCH Emergency Department.[3]  Mrs. Vandevelde verified her signature on each of the forms but testified that she did not recall reading the forms and did not remember when she signed them.[4]  Admissions Clerk Midge Clark testified that the consent form may be signed at any time during a patient's RCH Emergency Department visit depending on what is going on with their treatment.  Clark testified that sometimes the consent form is not signed until after care is provided.

As in *Roberts*, the fact that Mrs. Vandevelde did not read the Consent Upon Admission form is not dispositive.  *See id.*  Nor is the fact that she may have received the form after Defendant Poppens rendered treatment.[5]  *See id.*  In providing the Consent Upon Admission forms to patients receiving treatment, RCH has clearly attempted to alert the public that its physicians were not

---

[3]  The Consent Upon Admission form from Mrs. Vandevelde's first RCH Emergency Department visit was not produced as part of the certified copy of her chart the hospital sent Plaintiffs on October 10, 2005, but rather through Defense Counsel at a later date.  Plaintiffs question the authenticity of the form.  Mrs. Vandevelde admitted that it is her signature on said form.  This Court finds that the record does not support a finding that the form is inauthentic.

[4]  Plaintiffs state that the Consent Upon Admission form from Mrs. Vandevelde's first RCH Emergency Department visit was not fully completed.  Plaintiffs cite the testimony of Admissions Clerk Midge Clark who presented Mrs. Vandevelde with the Consent Upon Admission form during Mrs. Vandevelde's second RCH Emergency Department visit.  Clark testified that she made a little dash in the upper left-hand corner of the document to alert the patient that they need to read that section of the document.  The same dash was not made on the first Consent Upon Admission form.  There has been no testimony that the dash was required by RCH policy and procedure.  Additionally, the Court notes that when Mrs. Vandevelde first presented to the RCH Emergency Department she was admitted by Mike Donahe and there has been no testimony that Donahe used a check system.  The evidence does not support a finding that the first Consent Upon Admission form was not fully completed.

[5]  It is clear that Mrs. Vandevelde was provided this form at some point during her first RCH Emergency Department visit, as evidenced by her signature on the form.

7

employees or agents of the hospital.  No evidence has been presented of RCH characterizing the physicians as employees or agents of the hospital.

Therefore, this Court finds that Plaintiff's claims of negligence against RCH based on ostensible agency between RCH and Defendant Poppens fails as a matter of law.

## III.    INDEPENDENT NEGLIGENCE

In addition to denying any vicarious liability for the negligence of Defendant Poppens or Rives, RCH maintains that Plaintiffs have failed to establish any active negligence on the part of RCH as Plaintiffs have not identified a single expert witness who is critical of RCH.

A negligence action requires: "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).  In a medical malpractice case, the burden of proof is upon the plaintiff to establish the applicable standard of care and the breach thereof by medical or expert testimony.  *Green v. Owensboro Medical Health Sys., Inc.*, 231 S.W.3d 781, 783 (Ky. Ct. App. 2007).  It is a generally accepted proposition that the necessary expert testimony may consist of admissions by the treating physician. *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965); *see Butts v. Watts*, 290 S.W.2d 777, 778 (Ky. 1956) (holding that "evidence of a technical character" sufficient to sustain the plaintiff's case could be found in an admission of the defendant, Dr. Watts" even though the plaintiff had no expert witness).

Plaintiffs assert that the necessary testimony regarding the standard of care for emergency department nurses at RCH has been established through the testimony of RCH nurse Edith Ernst. Nurse Ernst testified as follows:

> A    If -- when I have an OB person come in, yes I will routinely just mention
>        "You know we don't have an OB unit here."

Q      Do you believe that's good nursing practice?

A      Well, I feel that they need to know that there is not an obstetrician that's going to be taking care of her, yes.

Q      Okay. And do you think that's part of your standard of care as a nurse working in the ER, to give that information out?

A      Well, yeah. I mean because I wouldn't want somebody to come here thinking that there's an OB doctor that they're expecting to find here.

Several other RCH employees agreed that the standard practice for RCH nurses was to inform the patient of the lack of obstetric capability in that facility.

Ernst testified that she told Mrs. Vandevelde of the lack of obstetric abilities at RCH.[6] Although Mrs. Vandevelde testified that she did not know of the obstetric capabilities of RCH as of September 24, 2005, Plaintiffs cite no testimony given by Mrs. Vandevelde that she was not told by Ernst of the obstetric capabilities during her visit to RCH on September 24, 2005. Thus, there is no evidence indicating that RCH breached the purported standard of care.

Additionally, this Court finds that Plaintiffs have failed to establish the necessary causation. Plaintiffs claim that the failure of the RCH nursing staff to notify Mrs. Vandevelde of RCH's obstetric capabilities led her to return to RCH, which was unable to provide the emergency obstetric services she and her baby needed, and that the baby died as a result. However, Mrs. Vandevelde did not return to RCH, rather she sought care at RCPC, which is not affiliated with RCH. RCPC then sought to transfer Mrs. Vandevelde to Lake Cumberland Regional Hospital. While the transfer

---

[6] Ernst also testified that Defendant Poppens told Mrs. Vandevelde of the lack of obstetric abilities at RCH. Defendant Poppens testified that he never spoke to Mrs. Vandevelde as to what sevices were and were not available at RCH. However, Plaintiffs assert only that the standard of care required the nurse, not the physician, to tell the patient of the lack of obstetric abilities. Therefore, this is not a material factual dispute.

9

arrangements were being made, Mrs. Vandevelde began to bleed from her vagina, which necessitated her removal by ambulance to RCH.  It is evident that any failure by the RCH nursing staff to inform Mrs. Vandevelde of RCH's obstetric capabilities did not lead Mrs. Vandevelde to seek treatment at RCH.

**CONCLUSION**

For the foregoing reasons, RCH's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.