UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:06CV-40-R

TONYA VANDEVELDE, et al.                                                                    PLAINTIFFS

v.

CLIFFORD A POPPENS, M.D., et al.                                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Clifford A. Poppens's Motion for Partial Summary Judgment on the Issue of Loss of Chance and Pain and Suffering of Brooklynn Vandevelde (Docket #57). Defendant Russell County Hospital ("RCH") joined this Motion on January 22, 2008 (Docket #70), as did Defendant Peter A. Rives on January 24, 2008 (Docket #75). Plaintiffs filed a response (Docket #63) to which Defendants replied (Docket #85). This matter is now ripe for adjudication. For the reasons that follow, Defendants's Motion for Partial Summary Judgment is DENIED.

## BACKGROUND

On September 24, 2005, at approximately 5:50 a.m., Plaintiff Tonya Vandevelde presented to the RCH Emergency Department complaining of low back pain. Mrs. Vandevelde was thirty-three weeks pregnant and had traveled from her home in Cincinnati, Ohio to Russell County, Kentucky to visit relatives.

Upon presentation to the RCH Emergency Department, Mrs. Vandevelde was seen by Defendant Dr. Clifford A. Poppens. Dr. Poppens performed an internal pelvic examination and noted fetal hear tones. There was no effacement or dilation. Based on his examination, Dr. Poppens

diagnosed Mrs. Vandevelde with Braxton-Hicks contractions. Dr. Poppens discharged Mrs. Vandevelde with instructions to stay off her feet, follow up with her obstetrician in Cincinnati when she returned home, and to return to RCH if needed.

Later that morning, Mrs. Vandevelde presented to Russell County Primary Care ("RCPC"). There is no relationship between RCH and RCPC. Mrs. Vandevelde complained of severe low back pain as well as abdominal/pelvic pain. RCPC began to arrange a transfer to Lake Cumberland Regional Hospital for OB/GYN service; however, while these arrangements were being made, Mrs. Vandevelde began to bleed from her vagina. Mrs. Vandevelde was then taken by ambulance to RCH.

At 10:55 a.m., Mrs. Vandevelde arrived at the RCH Emergency Department and was seen by Defendant Dr. Peter Rives. Dr. Rives obtained the fetal heart rate using a fetal hear monitor and observed a fetal heart rate of 132 beats-per-minute. Dr. Rives then called Lake Cumberland Regional Hospital and spoke with Dr. Andrea Hill, OB/GYN, to arrange transport of Mrs. Vandevelde to Lake Cumberland Regional Hospital. Dr. Hill accepted the transfer and Mrs. Vandevelde was taken via ambulance to Lake Cumberland Regional Hospital. Upon arrival at Lake Cumberland Regional Hospital, Mrs. Vandevelde was diagnosed with intrauterine fetal demise. A c-section was then performed. Following the c-section, Dr. Hill confirmed that Mrs. Vandevelde had lost the baby due to placental abruption.

Mr. Vandevelde, who had been in Cincinnati, arrived at the hospital shortly before his wife's c-section. Following the c-section, both parents took turns holding the baby. Mr. Vandevelde removed the baby's hat, rubbed her head, kissed her head, and held her hand.

Plaintiffs filed their Complaint on March 22, 2006. In Count III of their Complaint, the

Plaintiffs assert a claim for loss of chance and pain and suffering of Brooklynn Vandevelde:

> Prior to her death, Brooklynn R. Vandevelde endured conscious pain and physical distress.
>
> Decedent's injuries were the direct and proximate result of Defendants' tortious conduct. Alternatively, that conduct increased the risk of harm to Brooklynn R. Vandevelde, and resulted in the loss of a chance of recovery and survival.
>
> Pursuant to K.R.S. §411.133, Plaintiffs seek reasonable compensation for Brooklynn R. Vandevelde's conscious pain and physical distress.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist

to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

### I.   LOSS OF CHANCE

Plaintiffs claim that Defendants's conduct increased the risk of harm to Brooklynn R. Vandevelde, and resulted in the loss of a chance of recovery and survival. Defendants assert that Kentucky does not recognize the loss of chance doctrine.

The loss of chance doctrine has been adopted in other jurisdictions in response to the all or nothing rule. *Dawson v. Jewish Hosp. Healthcare Servs., Inc.*, Nos. 2006-CA-001241-MR, 2006-CA-001501-MR, 2007 Ky. App. LEXIS 359, at *13 (Ky. Ct. App. Sept. 28, 2007) (citing *Thompson v. Sun City Cmty. Hosp., Inc.*, 688 P.2d 605 (Ariz. 1984); *Sharp v. Kaiser Found. Health Plan*, 710 P.2d 1153 (Colo. App. 1985); *Lord v. Lovett*, 770 A.2d 1103 (N.H. 2001)). Under the all or nothing rule, the plaintiff in a medical malpractice case must prove within a reasonable probability that the defendant's breach of the standard of care was a substantial factor in causing the underlying injury. *Id.* at *14 (citing *Walden v. Jones,* 439 S.W.2d 571 (Ky. 1968)). The loss of chance doctrine "views the compensable injury as the last chance to recover or survive the underlying injury." *Id.* Under the loss of chance doctrine, the plaintiff must still prove that the defendant breached the applicable standard of care and that the breach was a substantial factor in causing a diminished chance of

recovery or survival from the underlying disease or injury. *Id.*

On the date that this opinion is written, *Gordon v. Kemper*, 2002-CA-001983-MR, remains under discretionary review with the Kentucky Supreme Court.[1] In that case, the Kentucky Court of Appeals adopted the loss of chance doctrine in medical malpractice cases. *Dawson*, 2007 Ky. App. LEXIS 359, at *13. In *Gordon*, the Kentucky Court of Appeals summarized its holding as follows:

> Accordingly, we now hold that lost chance of recovery/survival should be recognized as a legally compensable injury in medical malpractice cases where the chance of recovery/survival is 50 percent or less before the negligent act or omission. In cases where the chance of recovery/survival was greater than 50 percent, the traditional all-or-nothing approach would apply and the compensable injury would still be viewed as the underlying injury.

*Id.*

Pursuant to Ky. CR Rule 76.30(2)(a) an opinion of the Kentucky Court of Appeals becomes final on the thirty-first day after the date of its rendition unless a petition under Ky. CR Rule 76.32 (petition for rehearing) or a motion for review under Ky. CR Rule 76.20 (motion for discretionary review) has been timely filed or an extension of time has been granted for one of those purposes. Unless otherwise ordered, an opinion does not become final while a timely motion for discretionary review is pending. Ky. CR Rule 76.30(2)(d). In Kentucky, opinions that have not become final are not considered controlling authority. *Kohler v. Transp. Cabinet*, 944 S.W.2d 146, 147 (Ky. Ct. App. 1997); *Weathers v. Town & Country Ford*, No. 2002-CA-002641-WC, 2003 WL 21674711, at *2 (Ky. Ct. App. July 18, 2003 ).

This Court finds that the best course of action is to issue the jury an instruction on loss of

---

[1] Although Plaintiffs base their opposition to Defendants's Loss of Chance argument on *Gordon v. Kemper*, they failed to attach a copy of the case to their response in violation of Joint Civil Local Rule 7.1(h).

chance and allow them to make a determination on the issue. It is possible that, between the date that this opinion is written and the time of verdict, the Kentucky Supreme Court will issue a decision in *Gordon*. This Court will revisit the issue, if needed, following the return of the jury's verdict. Further, a jury decision would avoid the expense and need for any retrial of this case, should this Court and the Kentucky Supreme Court disagree on the viability of the loss of chance doctrine. The Court has discussed this with counsel and, without waiving any objections to the viability of the loss of chance doctrine, the parties agreed to this procedure.

## II.     PAIN AND SUFFERING DAMAGES

Plaintiffs seek to recover damages for Brooklynn Vandevelde's pain and suffering under K.R.S. 411.133, which states:

> It shall be lawful for the personal representative of a decedent who was injured by reason of the tortious acts of another, and later dies from such injuries, to recover in the same action for both the wrongful death of the decedent and for the personal injuries from which the decedent suffered prior to death, including a recovery for all elements of damages in both a wrongful death action and a personal injury action.

Defendants argue that this statute cannot be applied to a fetus. Plaintiffs assert that as Mrs. Vandevelde was thirty-three weeks pregnant on September 24, 2005, Brooklynn Vandevelde was a viable infant at the time of her death and, therefore, may recover damages for pain and suffering.

In *Mictchell v. Couch*, a truck driver was forced to drive his truck into a ditch as a result of a motorist operating his car at a careless and reckless rate of speed. 285 S.W.2d 901, 903 (Ky. 1955). The truck driver's wife, who was pregnant at the time, was injured. *Id.* Soon afterwards, the wife was transported to the hospital and delivered an infant, which was stillborn. *Id.* The truck driver filed suit for the wrongful death of the infant. *Id.* The trial court dismissed the action finding that no provision was made by any statute for a recovery based upon the wrongful death of a child

originating from injuries sustained prior to its birth. *Id.* The appellate court reversed the judgment, finding that a viable child is a "person" within the meaning of K.R.S. 411.130.[2] *Id.* at 906.

Defendants argue that this case does not support Brooklynn Vandevelde's claim for pain and suffering as *Mitchell* addressed K.R.S. 411.130, rather than K.R.S. 411.133, the statute under which Plaintiffs state their claim.

Viable fetus means that "the child has reached such a state of development that it can presently live outside the female body as well as within it." *Id.* at 905. Once the state of viability is reached, the unborn child becomes a legal person with a separate existence. *Orange v. State Farm Mut. Ins. Co.*, 443 S.W.2d 650, 652 (Ky. 1969), *overruled on other grounds by Bishop v. Allstate Ins. Co.*, 623 S.W.2d 865 (Ky. 1981). As stated in *Mitchell*, the reason "for holding that a viable unborn child is an entity within the meaning of the general word 'person' is because, biologically speaking, such a child is, in fact, a presently existing person, a living human being." *Mitchell*, 285 S.W.2d at 905.

The Court finds that the status of the viable unborn child as a legal person allows Plaintiffs to pursue a claim for Brooklyn Vandevelde's pain and suffering. Although *Mitchell* involved a claim under K.R.S. 411.130, the Court finds its reasoning equally applicable to a claim under K.R.S. 411.133.

Defendants also claim that the pain and suffering for a stillborn infant should not be allowed as there would be no proof that the child was conscious. *See Vitale v. Henchey*, 24 S.W.3d 651, 659

---

[2] K.R.S. 411.130 read in part at the time of the decision: "Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same." *Mitchell*, 285 S.W.2d at 903.

(Ky. 2000) (damages allowed only where there is a finding that the person endured conscious pain and suffering). However, such proof can be produced at trial via expert testimony.[3] *See Mitchell*, 285 S.W.2d at 905.

## CONCLUSION

For the foregoing reasons, Defendants's Motion for Partial Summary Judgment is DENIED.

An appropriate order shall issue.

---

[3] Although Defendants state that Plaintiffs's Expert Witness Disclosure did not mention any anticipated testimony from Plaintiffs's expert witnesses about Brooklynn Vandevelde's level of consciousness, this statement was only made in Defendants's reply brief. This argument differs from that raised in their original brief. Therefore, this Court will not consider that argument at this time. *See Osborne v. Hartford Life & Accident Ins. Co.*, 465 F.3d 296, 301 (6th Cir. 2006).